**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| COMTEL TECHNOLOGIES INC., | ) | |
| SOLAI & CAMERON INC., | ) | |
| | ) | Case No. 04 C 3879 |
| Plaintiffs, | ) | |
| | ) | Judge Virginia Kendall |
| vs. | ) | |
| | ) | |
| PAUL H. SCHWENDENER, INC.; | ) | |
| NULINE TECHNOLOGIES INC.; | ) | |
| PLAINFIELD COMMUNITY CONSOLIDATED | ) | |
| SCHOOL DISTRICT CO. 202; and | ) | |
| AMERICAN HOME ASSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM IN RESPONSE TO AMERICAN HOME ASSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

NOW COME Plaintiffs, ComTel Technologies Inc. ("ComTel"), Solai & Cameron Inc. ("Solai & Cameron") (sometimes collectively referred to as "Plaintiffs"), by and through their attorneys Justin L. Weisberg, W. Matthew Bryant, and Louis J. Gale, Arnstein & Lehr, LLP, and for their Memorandum in Response to American Home Assurance Company's ("American") Memorandum of Law in Support of its Motion for Summary Judgment states as follows:

### I. INTRODUCTION

In the instant case, American seeks summary judgment based upon an assertion that Plaintiffs did not timely amend a timely filed complaint against the surety. There is absolutely no legal authority to support American's contention that a timely filed complaint must be timely amended. Moreover, it is clear from the facts in this case that even the amendment was filed within the statutory limitation under the Public Construction Bond Act to file a complaint within six months of acceptance of the project. Additionally, American takes the remarkable position that the instant claim should be barred because the Illinois 12th Judicial Circuit Court (Will County of Illinois) (the "Will County Court") dismissed Plaintiffs' remaining claims by the Will County after recognizing that the same claims were pending in the instant action, and that American had long ago answered the complaint, and filed its affirmative defenses in the instant

action. American argues that a recent dismissal of remaining claims by the court in Will County is *res judicata* because a non-final order dismissed a separate bad faith claim "without prejudice" in Will County years ago and prior to American's answer to the complaint in this action on May 25, 2005.

## FACTS

This case arises out of two construction projects, the Plainfield Fourth Middle School (the "Middle School Project") and the Plainfield Second High School (the "High School Project," collectively, the "Projects") for the Plainfield Community Consolidated School District ("District"). (Ex. A ¶ 14; Ex. B)[1]. Paul A. Schwendener, Inc. ("PHS") served as the general contractor on the Projects. *Id.* Pursuant to its contract, and in accordance with the Illinois Public Construction Bond Act (the "Bond Act"), PHS obtained from American a payment bond (the "Payment Bond"). (Ex. A ¶ 156; Ex. C). In June 2001 PHS, in turn, hired the Plaintiffs as the electrical subcontractor for both Projects. (Ex. A ¶ 21). In June 2002 the Plaintiffs served lien and bond claim notices relating to amounts they claimed were due for work on the Fourth Middle School and Second High School. (Ex. A ¶¶ 150, 214). Shortly thereafter, PHS terminated the Plaintiffs from the Fourth Middle School and Second High School. (Ex. A ¶ 67).

On July 16, 2002, the Plaintiffs sued PHS, the District, and American in the Will County, Illinois Circuit Court (the "Will County Litigation"), seeking $1,096,674.81 under various legal theories, including claims under the Illinois Public Construction Bond Act (the "Bond Act") and the Illinois Mechanics Lien Act (the "Lien Act"). (Exs. L & M). The Plaintiffs thereafter amended their lien and bond claim notices on December 3, 2002, adding claims for $1,488,954.96 for a total of $2,585,629.77. (Exs. N & O). On July 8, 2004, the Plaintiffs amended their complaint in the Will County Litigation, asserting the amended lien and bond claims. (Exs. Q & R).[2] The amended bond claims sought recovery under the same bond for the same projects under the same subcontracts, and against the same contractor and surety as the original bond claims.

---

[1] The exhibits referenced in this Memorandum are attached to Plaintiffs LR 56.1(B)(3)(C) Statement of Additional Facts and American's Statement of Uncontested Facts.

[2] American asserts that "[t]he Change Order Claims were neither additions to nor amendments of the Initial Claims . . . ." (Am. Memo. p. 2) this incorrect statement is an apparent concession that there is no requirement to amend. However the change orders are both additions and amendments to the original contract that is why they are called "change orders," and therefore are part of that same contract.

While the Will County Litigation was pending, the Plaintiffs instituted this action ("Federal Court Litigation") on June 7, 2004. (Ex. P). In their Complaint, the Plaintiffs originally sued PHS for violations of the Civil Rights Act, fraud, deceptive trade practices, conversion and civil conspiracy. *Id*. Plaintiffs also sued Nuline Technologies, Inc. ("Nuline") for its alleged tortious interference with the Plaintiffs' contract with PHS, conversion and civil conspiracy. *Id*. None of the claims originally asserted in the Federal action were asserted in the Will County Litigation.

In response, PHS filed the same counterclaim and third party claims which were pending in the Will County Litigation. Plaintiffs and Hartford filed motions seeking abstention by the Court of the PHS counterclaim and third party claims based upon the *Colorado River Doctrine* because the counterclaim and third party complaint was already pending in the Will County Litigation. (Ex. T). Plaintiffs and Hartford also argued that if the Court did not abstain from hearing the claims asserted by PHS that Plaintiffs would be forced to file the counts they originally filed in the Will County Litigation, including the lien claims, as compulsory counterclaims. *Id*. By order dated February 22, 2005 the Court denied the motions to abstain and granted in part a motion to dismiss by PHS. *Id*. Based upon the Court's February 22, 2005 ruling, on May 2, 2005, the Plaintiffs amended their complaint and added the claims at issue in the Will County Litigation including the claims seeking recovery from American. (Ex. U). Both American and PHS answered the Second Amended Complaint by Plaintiffs on March 25, 2005 and written discovery began. (Ex. AS). As a number of counts in the Federal and Will County Court action were the same, the parties agreed not to duplicate discovery, but instead agreed that discovery from one action could be used in the other action.

On February 7, 2006 the Will County Court entered summary judgment in favor of Plaintiffs and Hartford on certain counts asserted by PHS in the counterclaim and third party complaint. PHS filed a notice of appeal of the Summary Judgment on March 7, 2006. Based upon the Appeal, both actions were stayed until the Illinois Appellate Third District affirmed the judgment by opinion dated July 10, 2007. The same week as the opinion by the Third District, PHS filed for bankruptcy protection effecting an automatic stay over the instant litigation until the bankruptcy court entered an order lifting the stay pursuant to a motion by Plaintiffs on January 16, 2008. (Ex. AP).

The Will County Litigation included approximately one dozen lien claimants against PHS in addition to the lien claims by Plaintiffs. No other lien claim but one had a relationship to the electrical contract at issue in Plaintiffs' claim. (*See* Exs. L – O). The Federal Litigation included only the claims directly related to the electrical contract including the claims by Plaintiffs against American and Nuline. (*See* Ex. P). The claims against Nuline were not asserted in the Will County Litigation although they had a direct impact upon the claims against American. On June 24, 2008, the Plaintiffs voluntarily dismissed their bond claims against American in the Will County Litigation in favor of the pending Federal Litigation. American requested, and was granted, the opportunity to respond to the Plaintiffs' motion. American ultimately determined that it had no legal basis to oppose the Plaintiffs' motion because of Plaintiffs' absolute right to voluntarily dismiss in the manner Plaintiffs sought. American specifically refused to consent to the motion. The Will County court granted Plaintiffs' motion on August 18, 2008. (Ex. W). On September 26, 2008 the Will County Court entered a settlement order allowing a settlement payment of $1,359,099.65 to Plaintiffs and specifically reserving a claim by Plaintiffs against American in the amount of $1,226,529.94. (Ex. X).

On March 31, 2009, the Plaintiffs moved to dismiss all of their remaining causes of action in the Will County Litigation pursuant to 735 ILCS 5/2-619(a)(3) in favor of the current action in Northern District of Illinois because all remaining causes in the Plainfield action were also pending in the Federal action. (Ex. AB). On April 9, 2009, that motion was granted. (Ex. AC).

## II. RESPONSE TO UNDISPUTED MATERIAL FACTS

Plaintiffs have filed a separate response to American Home Assurance Company's Rule 56.1 Statement of Uncontested Facts in Support of its Motion for Summary Judgment and a separate Statement of Additional Facts.

## III. ARGUMENT

"Summary judgment is proper when the evidence on file demonstrates that there is no genuine issue as to any material fact." *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009) (citing Fed. R. Civ. P. 56(c)). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court is tasked with "reviewing the record as a whole and drawing all

reasonable inferences in favor of the nonmoving party . . . ." *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009) (citations omitted).

### A. Timeliness

Plaintiff's filed their initial action on July 16, 2002 on American's bond No. 208691. The action was filed well before the Projects were accepted by the District, which would begin the 6 month time for filling under the Public Construction Bond Act ("Bond Act"), 30 ILCS 550/2 (West 2008). These facts are not in dispute. While the language of the Payment Bond prohibits an action or suit one year after either the claimant gave notice or any work was performed on the project, whichever of these occurrences was first (Ex. C ¶ 11), it is the six month provision of the Bond Act that controls here. There is no issue of fact as to whether the complaint filed by the Plaintiffs was timely filed. Furthermore, American cites no caselaw that supports the position that an amendment to a timely complaint must also be filed within any specific period in order for a party to preserve their claim. In fact the word amendment does not appear in either the Bond Act or the Payment Bond. Consequently American's claim is without merit as there is no dispute that the original suit against American complied with all timing requirements and there were no additional requirements applicable to the amended complaint against American on the same bond by the same party and based upon the same subcontract. In fat, with respect to the amendment in Will County, the Illinois Statute of Civil Procedure that addresses amendments can be found at 735 ILCS 5/2-616 (the "Statute"). The Statute states that "At any time before final judgment amendments may be allowed on just and reasonable terms." The Statute also states that if the cause of action relates to the original transaction or occurrence the amendment to any pleading shall be held to relate back to the date of the original filing. Both the Will County Court and the instant court allowed the amended complaints and American answered both amended complaints long before the instant motion.

Furthermore, even though there was no timing requirement for an amended complaint, the amended complaint was also filed within the timing requirements of the Bond Act. Limitation provisions such as those in the Payment Bond are enforceable in Illinois. *Carroll Seating Co. v. Verdico*, 369 Ill. App. 3d 724, 730 (1st Dist. 2006). However, the Bond Act's provisions are a floor below which parties may not go, i*d.*; *Templeman v. United States Fidelity,* 317 Ill.App.3d 764, 770 (1st Dist. 2000), because the Bond Act was created in order to protect subcontractors on public projects who are not permitted to file mechanics' liens against public

entities. *Aluma Systems v. Frederick Quinn Corp.*, 206 Ill. App. 3d 828, 853-54 (1st Dist. 1990). In *Carroll Seating* the court chose the legal path that provided more expansive protection for the subcontractor. *Carroll Seating Co.*, 369 Ill. App. 3d at 730. *Templeman* provides further support for the in essence one way requirement that the surety and contractor are free to contract to provide protection to the subcontractor that exceeds the protection provided to subcontractors by the Bond Act. There the court determined that the surety was free to waive the notice requirements under the Act since the notice requirements were for the benefit of the surety. *Templeman*, 317 Ill.App.3d at 771. No Illinois court has held that a surety can rely on provisions in a bond which conflict with the Bond Act when the bond provisions extend the protection to the surety and limit the protections to the subcontractor. Therefore, contrary to the arguments by American, and in accordance with *Carroll Seating* and *Templeman*, the provisions of the Payment Bond which conflict with the limits of the Bond Act are void to the extent that they limit the rights of the Plaintiffs.

Under the Bond Act subcontractors such as the Plaintiffs are barred from bringing an action "6 months after the *acceptance* by the State or political subdivision thereof of the building project or work." 30 ILCS 550/2 (emphasis added). The statute does not define acceptance. *See Chicago Housing Authority v. U.S.F. & G. Co.*, 49 Ill. App. 2d 407, 411 (1st Dist. 1964). Thus the more protective provision for Plaintiffs is either being required to file 6 months after acceptance, as required in the Bond Act, or one year after either filing notice or their last work on the project.

The Projects were never accepted by the District per the terms of the contract and therefore, as explained herein, the Bond Act applies because it provides more expansive protections than the one year limit of the Payment Bond. In the General Contract, under the heading "FINAL COMPLETION AND FINAL PAYMENT" when the Projects were "ready for final inspection and acceptance" the architect is required to make an inspection and "when the Architect finds the Work acceptable . . . the Architect will promptly issue a final Certificate of Payment." (Ex. B ¶ 9.10.1). The final Certificate of Payment shall state that the work is complete in accordance with the contract. *Id.* In the present case no final Certificate of Payment as evidence that the architect on the Projects found the work acceptable was issued prior to the initial suit against American, nor was a certificate of final payment issued prior to the Second Amended Complaint filed in this action. Such a certificate would demonstrate that the work on

the Projects was completed, as opposed to substantially complete, which American argues are the same. Two separate provisions exist in the General Contract; one for Substantial Completion in Section 9.8 and another for Final Completion and Final Payment in Section 9.10. The reason a final Certificate of Payment has not issued is because over a year and a half after American argues the Projects were accepted – which they were not – the District and HSB were still contacting PHS to compete the work. (Ex. AK – AO). Further note that in September 2008 the District still had held back over $1,000,000 in public funds related to the Middle School Project and the High School Project, (Ex. X at attached tables), and in July 2008 still had back charges of over $190,000 attributed to the projects. (Ex. AQ). The holdbacks and back charges support the Plaintiffs' position that the Projects were never accepted. The hold back of funds and back charges conflict with American's argument that the projects were accepted and precludes summary judgment.

American selectively reads *City of DeKalb v. Sornsin* and *Village of Yorkville* for the proposition that a project is accepted when a public body begins using the project. *See City of DeKalb v. Sornsin*, 32 Ill. 2d 284 (1965); *Village of Yorkville v. Lewis Const. Co.*, 48 Ill. App. 2d 463 (2nd Dist. 1964). *Sornsin* actually stands for the proposition that under *some* circumstances possession *might* constitute acceptance. *Sornsin*, 32 Ill. 2d at 290 (emphasis added). However the court in *Sornsin* held that the contract provision explicitly calling out acceptance would control. *Id.* In this case we similarly have explicit contract language explaining how acceptance of the Projects is to take place and that language was not satisfied. The *Village of Yorkville* court held that Yorkville had accepted based "upon final payment on the engineer's certificate of completion pursuant to the provisions of the contract *and* utilization of the water mains that Yorkville accepted . . . ." *Village of Yorkville*, 48 Ill. App. 2d at 468 (emphasis added). Finally, American's citation to *MQ Const. Co., Inc. v. Intercargo Ins. Co.*, 318 Ill. App. 3d 673 (1st Dist. 2000) is misguided since that case concerns itself with the definition of "last work" not acceptance and is therefore inapplicable to the case at hand. *Id.* at 684. In sum courts in cases such as *Sornsin* and *Village of Yorkville* have looked to the circumstances of the case to determine if acceptance has occurred and have found that the language of the contracts and compliance with that language is what controls.

The facts of *Templeman v. United States Fidelity*, 317 Ill. App. 3d 764 (1st Dist. 2000) are instructive because the parties there could not agree that the project was accepted. *Id.* at 766.

The court found that an issue of material fact existed between the parties on whether the project was ever accepted and thus denied the defendant's motion for summary judgment on that issue. *Id.* at 769 n. 4. Similarly the case of *Chicago Housing Authority v. U.S.F. & G. Co.*, 49 Ill. App. 2d 407 (1st Dist. 1964) is instructive based on a defense claim that the project was not accepted and therefore an issue of fact existed. *Id.* at 409. In *U.S.F. & G. Co.* the contract called for a "Memorandum of Final Acceptance" which would, in part, state that the project was accepted. *Id.* at 412. No such instrument was ever issued but the defendant argued that the issuance of other documents satisfied the contract provisions. *Id.* The court in *U.S.F. & G. Co.* held that the other documents were not sufficient and that "the subcontractors under the contract had a right to rely on the contract provisions which stated that the project or work was to be accepted by the issuance of a 'Memorandum of Final Acceptance.'" *Id.* at 415.

Here Plaintiffs dispute that the project was accepted. American views certificates of substantial completion and similar occurrences as proving acceptance while the Plaintiffs assert overwhelming facts that the General Contract has an explicit provision for acceptance under the heading FINAL COMPLETION AND FINAL PAYMENT which was not met. Thus, even if there was a timing requirement related to the amendment of timely filed complaints,a factual dispute exists concerning the date of acceptance which prohibits summary judgment. The arguments put forth by American that Certificates of Substantial Completion and ribbon cutting ceremonies constitute acceptance are refuted by the contract language and the failure of the contractor to complete its work, triggering its right to acceptance and final payment.

American also asserts that any limitation period for filing a complaint also applied to the time for a claimant to file its amended complaint in the existing action. Under Illinois law when notice is required on a public project, filing the lawsuit within a statutory timeframe after notice is provided, even when the notice is corrected and the complaint is refiled is legally sufficient. *Aluma Systems v. Frederick Quinn Corp.*, 206 Ill. App. 3d 828, 846-47 (1st Dist. 1990). In *Aluma Systems* the plaintiffs filed a notice on a claim, filed a second notice, and then filed their litigation within the required timeframe for filing the lawsuit. *Aluma Systems*, 206 Ill. App. 3d at 834. The plaintiffs next filed a corrected notice, *id.*, and then dismissed their original lawsuit and refiled. *Id.* at 835. The appellate court held that the plaintiffs had substantially complied with the notice provisions based on the first notice and their having filed within the required time frame after that initial notice. *Id.* at 846-47.

Here the Plaintiffs served their notice, filed their complaint, then merely amended their notice and complaint. The court in *Aluma Systems* considered the initial notice and filing and nothing more to determine that notice was achieved. *Aluma Systems*, 206 Ill. App. 3d at 846-47. The acts of the Plaintiffs in the instant case are even more favorable than the *Aluma System* plaintiffs because here all the Plaintiffs have done is offered amendments. If the notice served on a complaint that is completely dismissed is sufficient under Illinois law as noted in *Aluma Systems*, certainly serving notice, filing, and later amending complies with Illinois law.[3]

### B. Res Judicata

"The burden of establishing *res judicata* . . . is upon the party invoking it, and to operate as such it must either appear upon the face of the record or be shown by extrinsic evidence that the precise question, or point, was raised in determining the former suit." *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d 484, 491 (Ill. 1993). "The applicability of *res judicata* hinges on three elements: '(1) an identity of the parties or their privies; (2) identity of the cause of action; and (3) a final judgment on the merits.'" *Alvear-Velez v. Mukasey*, 540 F. 3d 672, 677 (7th Cir. 2008) (quoting *Prochotsky v. Baker & McKenzie*, 966 F.2d 333, 334 (7th Cir. 1992)); *see Hudson v. City of Chicago*, 228 Ill. 2d 462, 470 (Ill. 2008). With respect to final judgments under the third prong, "[i]t is well settled that dismissal of a complaint is generally not final and appealable unless the order states that it is 'with prejudice' or in some other way indicates that the litigation is terminated and the plaintiff will not be able to replead." *Southerland v. Illinois Bell*, 254 Ill. App. 3d 983, 987 (1st. Dist. 1993); *see Jackson v. Alverez*, 358 Ill.App.3d 555, 559 (4th Dist. 2005); *Karen Bianchi v. Savino Del Bene Int'l Freight Forwarders, Inc.*, 329 Ill. App. 3d 908, 917 (1st Dist. 2002). "An order dismissing an action 'without prejudice' is not deemed final . . . ." *Paul H. Schwendener, Inc. v. Jupiter Elec.*, 358 Ill. App.3d 65, 73 (1st Dist. 2005); *Pfaff v. Chrysler Corp.*, 155 Ill. 2d 35, 62 (1992); *Deluna v. St. Elizabeth's Hospital*, 147 Ill. 2d 57, 76 (1992).

"The second element – identity of the cause of action – is determined by using the 'operative facts' or 'same transaction' test." *Alvear-Velez*, 540 F.3d at 672 (citing *In re Matter of Energy Coop., Inc.*, 814 F.2d 1226, 1230 (7th Cir. 1987)). In determining if a cause of action exists a court looks to whether there is "a core of operative facts which give rise to a remedy."

---

[3] As stated before, American desperately attempts to characterize the "amended notice" as a new claim, even though the amended claim was brought on the same bond, under the same subcontract, by the same party and merely increased the amount of the claim.

*Id.*; *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 338-39 (Ill. 1996); *Schnitzer v. O'Connor*, 274 Ill. App. 3d 314, 324 (Ill. App. Ct. 1995). An action will not be barred by res judicata when the "prior litigation involved a different cause of action than the litigation which the party invoking *res judicata* intends to terminate." *Zurich Ins. Co. v. Amcast Industrial*, 318 Ill. App. 3d 330, 333 (1st Dist. 2000); *see Comm'r v. Sunnen*, 333 U.S. 591, 597-98 (1948).

For the final judgment prong American takes the position that a case in which it answered a complaint in 2005 and even participated in discovery is somehow barred by a voluntary dismissal in another action which took place in August 2008. It is of note that the present claims, which mirror the claims that existed in the Will County Litigation, were existing and pending at the time of the voluntary dismissal of American in that matter. Moreover, the voluntary dismissal of two counts against American did not resolve the entire consolidated litigation, which continued to proceed with the participation of American. Neither case relied upon by American had identical pending claims in another proceeding at the time of the purported voluntary dismissal. *See Muhammad v. Oliver*, 547 F.3d 874, 876 (7th Cir. 2008); *Hudson v. City of Chicago*, 228 Ill. 2d 462, 470 (Ill. 2008). Nor were they dismissed in order to proceed in one of the two pending jurisdictions. *Id.* In both *Muhammad* and *Hudson* the trial court issued substantive rulings with respect to motions to dismiss. In *Muhammad* a defendant had the suit dismissed with respect to them because they had not signed the contract in question, *id*, 547 F. 3d at 876, and in *Hudson* a negligence count in the plaintiff's complaint was dismissed with prejudice because the defendant was immune from prosecution. *Id.*, 228 Ill. 2d at 466.

Here American attempts to radically expand *Muhammad* and *Hudson* to a point where nearly any ruling on any portion of a case can be used for preclusive effect. The holding of *Hudson* has already been distinguished in a case where the court held a final order was not issued. *Pagentini v. Ford Motor Co.*, 387 Ill. App. 3d 887, 893 (1st Dist. 2009). An order dismissing a suit with prejudice operates as a final order but in *Pagentini*, as here, such an order was not issued. *See id.* at 895. The court in *Pagentini* went on further to point out that they found "no authority for the proposition that a nonfinal order becomes final upon voluntary dismissal of a suit." *Id.*

In this case the holding of *Southerland* is also instructive because of the lack of a final appealable order or an indication from the court that the Plaintiffs could not replead. *Southerland*, 254 Ill. App. 3d at 987. A trial court must find that an order can be enforced or

appealed to consider the order final, *id*. (referring to Ill. Sup. Ct. R. 304(a)), and such an explicit expression is not present in this case. In fact, the order in question was dismissed without prejudice. (Ex. AJ).[4] Similarly in *Jackson* the order from the court explicitly dismissed a compliant with respect to one defendant with prejudice but was silent with respect to the dismissal of another defendant. *Jackson*, 358 Ill.App.3d at 559. The defendant dismissed with prejudice received a final order but the other defendant did not. In the *Muhammad*, *Hudson*, and *Rein* line of cases there are unsigned contracts, immunities, and statutes of limitation issues necessitating dismissal. Such is not the case here and those cases should not be read to treat an order regarding two parallel proceedings as an explicit final order barring claims.

Orders filed in the Will County Litigation since the non prejudicial dismissal of Plaintiffs' Unreasonable and Vexatious Delay claim have similarly been non final orders. The settlement order entered on September 26, 2008 explicitly reserved a portion of the Plaintiffs' claims against American. Furthermore, the Will County Court specifically dismissed the Plaintiffs' remaining claims in the Will County Litigation in favor of this pending litigation of those same claims via a Section 2-619(a)(3) motion by Plaintiffs. 735 ILCS 5/2-619(a)(3); (*See* Exs. W and AB). Neither *Hudson* or *Muhammad* involved Section 2-619(a)(3) dismissals based on other pending actions and are distinguished from the facts here. In fact, *Hudson* explicitly states that it is the refiling of a claim that is problematic, *Hudson*, 228 Ill. 2d at 473, and that holding is repeated in *Muhammad*, 547 F.3d at 876-77, but here the Federal Litigation was already pending. These three orders are anything but explicit final orders and to so hold would extend existing case law well beyond its current reach and to ignore the explicit final order requirements of *Jackson* and *Pagentini*. Additionally, the refiling requirement stated in *Hudson* and *Muhammad* could not occur here because the Federal Litigation was already pending.

Furthermore, if the order dismissing the unreasonable and vexatious delay count was somehow a final order, *which it was not*, the Plaintiffs still have an absolute right to refile their claims within one year or within the remainder of the duration of the statute of limitations, whichever is longer. *See S C. Vaughan Oil Co. v. Caldwell*, 181 Ill. 2d 489, 497 (1998) (citing 735 ILCS 5/13-217). In this case, as long as American continues to unreasonably and

---

[4] In American's exhibits the portion of the order stating that Plaintiffs' claim was dismissed without prejudice appears to have been cut off. A correct order showing the word "without" is attached as Exhibit AJ.

vexatiously deny Plaintiff's claim, the statute of limitation on that claim is not tolled. Thus, the Plaintiffs could refile their claim which precludes considering the order a final order.

With respect to the second *res judicata* prong – identity of the cause of action – courts in Illinois have denied motions for dismissal because of a lack of identity of the cause of action. In *Torcasso*, the Illinois Supreme Court found that the identity of two causes of action was not met because a claim involving a lease was signed after the relevant time period for fraud and contract claims and the record did not show that the same evidence was necessary for both. *Id*. at 491-92. In *Nowak v. St. Rita High School*, 197 Ill. 2d 381 (Ill. 2001), the plaintiff brought an Americans with Disabilities Act ("ADA") claim and a pendant state claim in federal court. *Id*. at 385. The plaintiff lost on a motion for summary judgment on the ADA claim and the pendant state law claim was dismissed. *Id*. at 385-86. The plaintiff refilled the state claims in state court, *id*. at 387, and that claim was not barred by *res judicata* because "[t]here was no adjudication on the merits on *that* claim . . . ." *Id*. at 392. The "plaintiff did not get his day in court and, therefore, *res judicata* [did] not apply." *Id*.

Here the claim for which a judgment was entered was a claim regarding the actions and omissions of American *after* demands were made by the Plaintiffs' for American to fulfill their obligations on their bonds. (Ex. Q ¶¶ 84-90; Ex. R ¶¶ 83-89). The claims American seeks to have dismissed via the present motion are premised upon a set of operative facts that took place *before* the Plaintiffs' demands for payment on the bonds. (Ex. A ¶¶ 155-65, 219-29). The specific claims against the bond were what the Plaintiffs voluntarily dismissed, which is separate from the actions of American after the claims were filed. (Ex. W). These facts align with *Torcasso* in which two distinct claims occurred, one happening before the other, with the adjudication of one claim not barring the other claim. Unlike the instant case, *Torcasso* and *Nowak*, in *Muhammad* and *Hudson* the two suits at issue "arose out of the same facts." *Muhammad* 547 F.3d at 876; *see Hudson*, 228 Ill. 2d at 467, and are inapplicable here. Here the cause of action against American that was dismissed arose from a set of facts that occurred after the Plaintiffs approached American with their claim. American attempts to combine two separate claims into one claim, when, in fact, the two claims arise out of separate facts.

Though *res judicata* does not apply to the instant case the Illinois Supreme Court has acknowledged six exceptions when multiple claims are at issue to prohibit the use of *res judicata*. *See Hudson*, 228 Ill. 2d at 472. Two of the exceptions, the consent of the parties and

reservation by the court to maintain a second action, are met here. *Id*. American consented to an action in the Federal Litigation first because their counsel, who represented both American and PHS before this Court, argued that case should be allowed to proceed in this Court in spite of the *Colorado River Doctrine*. (Ex. AR) American secondly consented by answering the complaint in this action, including thirteen affirmative defenses (Ex. AS), and filing discovery requests. (Exs. AT and AU). Under the second exception, the Will County Court reserved Plaintiffs' ability to maintain this suit, first by entering a settlement order explicitly reserving the claims against American and secondly by dismissing the remaining claims by Plaintiffs pursuant to 735 ILCS 5/2-619(a)(3) in favor of federal action based solely on the fact that the same claims in the Will County Litigation were also pending before this Court. (*See* Ex. W). These two exceptions further preclude American's *res judicata* claim. 735 ILCS 5/2-619(a)(3) specifically allows for dismissal when "there is another action pending between the same parties for the same cause" and the order by the Will County Court granting the dismissal motion specifically referenced the pendency of this instant action.

WHEREFOR Plaintiffs respectfully pray this Court:

A.     Enter an order against American denying their motion for summary judgment; and

B.     For such other relief as the Court deems just and appropriate.

By:     _____/s/ Louis J. Gale_____
One of their attorneys

Justin L. Weisberg
W. Matthew Bryant
Louis J. Gale
Arnstein & Lehr LLP
120 South Riverside Plaza, Suite 1200
Chicago, Illinois, 60606
(312) 876-7100

## PROOF OF SERVICE BY CM/ECF E-MAIL

Pursuant to LR5.9, the undersigned, an attorney, hereby certifies that he caused to be served, true and correct copies of the above-listed documents upon all counsel of record, as indicated on CM/ECF, via CM/ECF electronic mail on this 2nd day of July, 2009.


_____
/s/ Louis J. Gale