IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COMTEL TECHNOLOGIES, INC. and SOLAI & CAMERON, INC., | )<br>)<br>) |
| Plaintiffs, | ) Case No. 04 C 3879<br>) |
| v. | ) Judge Virginia M. Kendall<br>) |
| PAUL H. SCHWENDENER, INC., NULINE TECHNOLOGIES, INC., PLAINFIELD COMMUNITY CONSOLIDATED SCHOOL DISTRICT CO. 202, and AMERICAN HOME ASSURANCE CO., | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Comtel Technologies, Inc. ("Comtel") and Solai & Cameron ("Solai") (collectively "Plaintiffs") brought suit against Paul H. Schwendener, Inc. ("PHS") and Nuline Technologies ("Nuline") alleging violations of Plaintiffs' civil rights and bringing various tort claims related to Plainfield school construction projects for which PHS was the general contractor and the other parties were electrical subcontractors. Defendant American Home Assurance Company ("American") issued a payment surety bond ("the Bond") to PHS in connection with two relevant projects, the Plainfield Fourth Middle School ("the Middle School Project") and the Plainfield Second High School (the "High School Project") (collectively "the Projects"). The Court has supplemental jurisdiction over Plaintiffs' bond claims against American pursuant to 28 U.S.C. § 1367(a).

American now moves for summary judgment on the grounds that Plaintiffs' suit to recover

under the Bond was not timely filed and that Plaintiffs' claims are barred by the doctrine of res judicata. For the reasons set forth below, American's Motion for Summary Judgment is granted.

## UNDISPUTED FACTS

### I. The Underlying Contracts

PHS entered into a construction contract ("the Contract") with the Plainfield Community Consolidated School District No. 202 ("the District") on April 5, 2001. (Pl. 56.1 Resp. ¶ 5.)[1] The Contract provided for four school construction projects, including the Middle School Project and the High School Project that are at issue here. (Pl. 56.1 Resp. ¶ 6.) Healy, Snyder, Bender & Associates, Inc. ("HSB") was the architect for the two projects. (Pl. 56.1 Resp. ¶ 7.)

The Contract provided that the projects would be deemed "substantially complete" when they were "sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use." (Pl. 56.1 Resp. ¶ 8.) The Contract further stated that when each project "or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion which shall establish the date of Substantial Completion . . . ." (Pl. 56.1 Resp. ¶ 9.) The Contract required the projects to be substantially completed on or before July 15, 2002, and stated that the District would pay a bonus of $2,000 for each day prior to July 15 that each of the two projects was substantially complete. (Pl. 56.1 Resp. ¶ 11.) The Contract also contained a liquidated damages clause allowing the assessment of $2,000 in damages for each day following July 15 that the projects were not ready. (Pl. 56.1 Resp. ¶ 11.)

PHS obtained a Payment Bond for the Contract with American as the listed surety. (Pl. 56.1 Resp. ¶ 12.) The Bond provided that no suit could be brought more than one year following the

---

[1] Throughout this Opinion, citations to Plaintiffs' Response to American's Rule 56.1 Statement of Uncontested Facts have been abbreviated to "Pl. 56.1 Resp. ¶ __

earlier of the date on which the party bringing suit gave notice of a claim under the Bond or the last day on which any labor or service was performed or any materials or equipment were furnished under the Contract. (Pl. 56.1 Resp. ¶ 13.)[2] American and PHS also entered into a General Agreement of Indemnity, assigning to American all of PHS's rights, claims, and defenses arising under the Bond. (Pl. 56.1 Resp. ¶ 14.)

PHS hired the Plaintiffs as the electrical subcontractor for the projects. (Pl. 56.1 Resp. ¶ 15.) Under their contracts with PHS, Plaintiffs were to be paid $1,108,840 for the Middle School Project, and $1,008,160 for the High School Project. (Pl. 56.1 Resp. ¶ 15.) Plaintiffs began work on the projects in June 2001; PHS subsequently terminated them from the Middle School Project on June 7, 2002 and from the High School Project on June 15, 2002. (Pl. 56.1 Resp. ¶¶ 16-18.)

## II. Completion of the Projects and Initial Claims

The High School Project reached substantial completion on July 5, 2002, upon which HSB issued a Certificate of Substantial Completion. (Pl. 56.1 Resp. ¶ 19.) The Middle School Project reached substantial completion on July 17, 2002, and a Certificate of Substantial Completion was issued that day. (Pl. 56.1 Resp. ¶ 21.) In both cases, the District took possession of the projects on the dates of substantial completion and assumed responsibility for their heat, electricity, water, security, and maintenance. (Pl. 56.1 Resp. ¶¶ 20, 22.) The District issued Certificates of Occupancy for both projects on August 26, 2002. (Pl. 56.1 Resp. ¶ 25.) In accordance with the Contract, the District agreed to pay PHS a $20,000 bonus for early completion of the High School Project and to assess $4,000 in liquidated damages for late completion of the Middle School Project. (Pl. 56.1

---

[2] Plaintiffs deny this statement of fact as violating the Illinois Public Construction Bond Act, 30 ILCS 550 *et seq.* They do not appear to dispute, and certainly do not properly dispute under Rule 56.1, that the exhibit attached to American's Rule 56.1 statement of this fact is a true and accurate copy of the Bond document, and that the document contains the referenced provision.

3

Resp. ¶ 26.)

On or about June 5, 2002, Plaintiffs notified American of a claim under the Bond in the amount of $537,118.30, which Plaintiffs claimed to be owed for labor and materials related to the Middle School Project. (Pl. 56.1 Resp. ¶ 27.) On the same day, Plaintiffs notified American of a Bond claim in the amount of $559,553.60 for labor and materials related to the High School Project. (Pl. 56.1 Resp. ¶ 28.)

### III. Amended Claims

On December 3, 2002, Plaintiffs filed notice to American of additional Bond claims over and above those which they had originally claimed. (Pl. 56.1 Resp. ¶¶ 31, 32.) Plaintiffs' amended claims sought an additional $1,152,915.70 over the original Bond claim for the High School Project, for a total claimed amount of $1,690,034; and an additional $336,041.99 over the original Bond claim for the Middle School Project, for a total claimed amount of $895,595.59. (Pl. 56.1 Resp. ¶¶ 31, 32.) These new claims (the "Change Order Claims") were based upon asserted "Change Orders" amending the terms of Plaintiffs' original contract with PHS and related to work "extra work performed by" Plaitniffs "which was not included in the original claim. (Pl. 56.1 Resp. ¶¶ 30-32.)[3]

### IV. State and Federal Court Litigation

Plaintiffs filed suit on July 16, 2002, against American and others in the Will County, Illinois Circuit Court (the "Will County suit") seeking recovery for their Bond claims as initially noticed to American. (Pl. 56.1 Resp. ¶ 29.) On June 29, 2004, more than eighteen months after notifying

---

[3] Plaintiffs assert that the December notice "amended" its earlier claim under the Bond, and did not constitute a new or additional claim. However, the plain language of the notice of "amendment" reflects that the December notice asserted different claims for different work than that claimed in the original notices, and did not merely "amend" the earlier notification by, for example, correcting a clerical error. (*See* R. 174 Exs. L & M.) Plaintiffs have provided no authority in support of the proposition that they are allowed to "amend" bond claims simply by labeling new claims for new work as "amendments," which, if allowed, would render the exposure of a surety bond-holder potentially infinite and completely defeat the time-limiting purpose of the Bond Act.

American of the new claims, Plaintiffs amended their state court complaint to reflect the amended claims regarding the High School Project. (Pl. 56.1 Resp. ¶ 35.) On July 8, 2004, Plaintiffs amended their state court complaint to reflect the new claims for the Middle School Project. (Pl. 56.1 Resp. ¶ 35.) In their amended complaints, Plaintiffs also asserted claims against American for "Unreasonable and Vexatious Delay," which claims the state court dismissed without prejudice on October 7, 2004. (Pl. 56.1 Resp. ¶ 36.)

On June 7, 2004, Plaintiffs filed this federal lawsuit, although American was not included as a Defendant at that time. (Pl. 56.1 Resp. ¶ 34.) American was first added as a Defendant on May 2, 2005, when Plaintiffs filed their Second Amended Complaint. (Pl. 56.1 Resp. ¶ 38.) Due to state court appeals, the bankruptcy of PHS, and other administrative factors, little progress was made in the federal litigation between May of 2005 and February of 2009. (Pl. 56.1 Resp. ¶ 39.)

On July 22, 2008, Plaintiffs moved to voluntarily dismiss their Bond claims against American in the state court action. (Pl. 56.1 Resp. ¶ 40.) The state court granted that motion on August 18, 2008. (Pl. 56.1 Resp. ¶ 41.) On September 26, 2008, Plaintiffs were party to an agreed order under which they were to receive full payment for their originally asserted claims and partial payment for the increased claim amounts noticed on December 3, 2002. (Pl. 56.1 Resp. ¶ 42.) Plaintiffs subsequently fully released their claims against the District, and released their claims against American with respect to the amount received pursuant to the agreed order. (Pl. 56.1 Resp. ¶ 43.)

On March 31, 2009, Plaintiffs moved to voluntarily dismiss their remaining claims in the state court action in view of the pending federal litigation; that motion to dismiss was granted on April 9, 2009. (Pl. 56.1 Resp. ¶¶ 44-45.)

5

**STANDARD OF REVIEW**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

**DISCUSSION**

**I. American's Motion for Summary Judgment**

**A.** *Res Judicata*

American moves for summary judgment on the ground that this action is barred by the doctrine of *res judicata* and the rule against claim splitting. Specifically, American asserts that the

dismissal of claims against American in the Will County suit precludes litigation of Plaintiffs' Change Order Claims in federal court.

*Res judicata* prevents litigation of a claim if a court of competent jurisdiction has (1) reached a final judgment on the merits (2) resolving the same cause of action and (3) involving the same parties or their privies. *See Garcia v. Vill. of Mt. Prospect*, 360 F.3d 630, 635 (7th Cir. 2004) (citing *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998)). The rule against claim splitting is an extension of *res judicata* that bars "not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action." *Brzostowski v. Laidlaw Waste Sys.*, 49 F.3d 337, 338 (7th Cir. 1995) (applying Illinois law). The rule against claim splitting does not alter the requirements of *res judicata*: there still must be a final judgment on the merits for the doctrine to bar a subsequent action. *See Crop-Maker Soil Serv., Inc. v. Fairmount State Bank*, 881 F.2d 436, 440 (7th Cir. 1989).

The parties do not dispute that Will County suit was between the same parties and involved the same cause of action. However, Plaintiffs assert that there was no final judgment on the merits in the state court case. The Will County court dismissed the Change Order Claims without prejudice after Plaintiffs filed a motion to voluntarily dismiss their bond claims against American. *See* R. 244, Pl. Surreply to Supp. Brf., Ex. B. A dismissal on procedural grounds entered without prejudice does not constitute a final decision on the merits. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) (dismissal without prejudice "does not have a res judicata effect"). Nor did the March 2009 voluntary dismissal of Plaintiffs' remaining state court claims constitute a final judgment on the merits because the Will County court expressly stated that Plaintiffs' motion to voluntarily dismiss those claims was granted based on the pendency of these proceedings in federal court, and

7

did not state that the state court suit would be dismissed with prejudice.[4] Plaintiffs' claims are therefore not barred by *res judicata*.

### B. Timeliness

American also moves for summary judgment on the ground that Plaintiffs' claims were untimely. The parties agree that the Public Construction Bond Act, 30 ILCS 550/2 ("Bond Act") governs the timeliness of plaintiffs' Change Order Claims. Under the Public Construction Bond Act, 30 ILCS 550/2 ("Bond Act"), "no action shall be brought until the expiration of 120 days after the date of the last item of work or the furnishing of the last item of materials . . . nor shall any action of any kind be brought later than 6 months after the acceptance by the State or political subdivision thereof of the building project or work." 30 ILCS 550/2. A plaintiff that sues on a statutory bond "executed pursuant to the requirements of [an] Act relating to such a bond . . . is subject to the conditions and limitations imposed by said Act." *Concrete Structures of Midwest, Inc. v. Fireman's Ins. Co.*, 790 F.2d 41, 43 (7th Cir. 1986). A plaintiff's failure to file within this six-month window after acceptance of a project bars recovery under the Bond Act. *See Shaw Indus., Inc. v. Cmty. Col. Dist. No. 515*, 741 N.E.2d 642, 650 (Ill. App. 2000) ("Compliance with the limitation period in section 2 of the Bond Act is a jurisdictional requirement.").

Neither the Bond Act nor the Contract explicitly define what actions or events constitute "acceptance" of the Projects. American argues that acceptance occurs when a public body takes possession and begins using the project for its intended purposes, even if the contractor has

---

[4] American submitted supplemental authority to support the proposition that *res judicata* and the policy against claim-splitting apply to concurrently pending claims. *See Cartwright v. Moore*, 913 N.E.2d 1163 (Ill. App. Ct. 2009). In *Cartwright*, a prior final judgment on the merits precluded relitigation of voluntarily dismissed claims arising from the same operative facts in a second concurrently pending proceeding. Here, the state court dismissed Plaintiffs' claims on procedural grounds in express consideration of the present federal action, but did not enter a judgment on the merits. *Cartwright* is therefore plainly distinguishable.

8

not completed work on the project. Plaintiffs argue that the Contract implicitly defines acceptance under the heading "FINAL COMPLETION AND FINAL PAYMENT." The Contract states that when the Middle School Project and High School Project are "ready for final inspection and acceptance" the architect must inspect the work and "when the Architect finds the Work acceptable . . . the Architect will promptly issue a final Certificate of Payment." (R. 174, Ex. B, General Contract ¶ 9.10.1.)

The section relied upon by Plaintiffs, however, is not an implicit definition of acceptance and leaves open the possibility that acceptance may precede final completion and final payment. The preceding section indicates that "partial occupancy or use of a portion or portions of the Work shall not constitute acceptance . . . ." (R. 174, Ex. B, General Contract ¶ 9.9.3.) The District did more than merely occupy or use a portion of the Projects, however; it began actively using the entirety of the facilities no later than August of 2002. The Contract only expressly provides that partial occupancy, without more, does not constitute acceptance, while saying nothing about implicit acceptance upon full occupancy and use.

Furthermore, if acceptance of the Projects was contingent upon final payment and final completion, the filing period under the Contract could be indefinite. *See United City of the Vill. of Yorkville v. W.J. Lewis Constr. Co.*, 198 N.E.2d 863, 866 (Ill. App. 1964) ("Should 'acceptance' be defined technically as [the issuance of] a resolution by a municipality it would appear that in many instances the time for filing a suit would never run.").

Plaintiffs admit that the District assumed possession of the High School Project on July 5, 2002 and the Middle School Project on July 17, 2002. (Pl. 56.1 Resp. ¶ 20, 22). Plaintiffs further admit that upon assuming possession the District assumed responsibility for the schools' heat,

9

electricity, water, security, and maintenance. (Pl. 56.1 Resp. ¶¶ 20, 22). The District issued certificates of occupancy for the schools on August 26, 2002. (Pl. 56.1 Resp. ¶ 25). The parties agree that the work on both the Middle School Project and the High School Project was substantially complete by July 17, 2002. (Pl. Resp. 56.1 ¶¶ 19, 21). Thus, as of at the latest August 26, 2002, the District had taken possession and control of the Projects, they were substantially complete, and they were being used for their intended purpose. In September of 2002, the District agreed to pay out a completion bonus as provided by the Contract. (Pl. 56.1 Resp. ¶ 26.) The Court finds this persuasive evidence of an intent to accept the Projects as of, at the very latest, that time. *Cf. City of DeKalb v. Sornsin*, 205 N.E. 2d 254, 257 (Ill. 1965) (where a long period had elapsed before payment, the evidence indicated that acceptance was not coincidental with possession). Given the ambiguity of the Contract with respect to acceptance, and the circumstantial evidence showing intent on the part of the District to accept the Projects, the Court finds that the Projects were accepted for purposes of the Bond Act by no later than September of 2002.[5] *See Charles F. Murphey Co. v. Fulton Bag & Cotton Mills*, 280 F. 367, 369 (7th Cir. 1922) ("Acceptance involves more than mere physical possession. Intent may become the determinative factor.").

Plaintiffs failed to file suit asserting the Change Order Claims—its new claims for different work than that asserted by the original claims, as explained above—of which it had provided American notice in December 2002, until July 8, 2004 in the Will County litigation and May 2, 2005

---

[5] Plaintiffs' proposed additional facts, to which American failed to respond, mainly purport to contradict the idea that District accepted the Projects in 2002 by arguing that punch list items were still being submitted into the fall of 2003, and that certain punch list items remained unfinished as late as April of 2005. The Court does not find this additional information contrary to the conclusion that the District had accepted the projects at the time that it assumed control of them and began using them as public schools. Nowhere in the Contract is acceptance defined, implicitly or explicitly, as the completion of all work on the Projects to the District's satisfaction. Significantly, Plaintiffs have provided no evidence that the additional punch-list items were original and uncompleted work, rather than maintenance and repair work, completion of which does not "reset the clock" under which Bond claims may be brought. *See United States ex rel. Automatic Elevator Co., Inc. v. Lori Const.*, 912 F. Supp. 398, 400-01 (N.D. Ill. 1996).

in the present federal case. In both cases, Plaintiffs failed to file their claims within six months after the District's acceptance of the Projects. Plaintiffs' Change Order Claims were thus untimely filed, which bars recovery under the Bond Act. As noted above, the parties have entered into an agreement in the state court litigation that leaves only a partial amount of the Change Order Claims for adjudication by this Court. Because Plaintiffs cannot recover for their Change Order Claims under the Bond Act, American's Motion for Summary Judgment on grounds of untimeliness is therefore granted.

## CONCLUSION AND ORDER

Plaintiffs' claims are not barred by *res judicata* because the Will County court dismissed the case on procedural grounds which does not amount to a final judgment on the merits. Plaintiffs' recovery for the Change Order Claims is nonetheless barred because the Change Order Claims were not timely filed within six months of the District's constructive acceptance of the Projects.

American's Motion for Summary Judgment is granted.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: March 26, 2010

11